## STILLWELL v. McPHERSON.

(Circuit Court of Appeals, Second Circuit. November 7, 1910.)

### No. 39.

PATENTS (§ 328*)—INVENTION—CORRUGATED SHEET METAL CULVERT—DEMURRER.
　　The Watson patent, No. 559,642, for a corrugated sheet metal culvert, is
　　not so clearly void on its face for lack of invention as to warrant its being
　　so declared on demurrer to a bill for its infringement.

Appeal from the Circuit Court of the United States for the Northern District of New York.

Suit in equity by McClellan Stillwell, doing business as the Economy Culvert Company, against Frank McPherson, as Highway Commissioner, etc. Decree (172 Fed. 151) for defendant, and complainant appeals. Reversed.

Wallace R. Lane and George Mankle, for appellant.
Risley & Love (Bond & Miller, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The patent is No. 559,642, issued May 5, 1896, to James H. Watson, on a corrugated metal culvert. The Circuit Court held the patent void for want of patentable invention. The opinion will be found in 172 Fed. 151.

The inventor states that his invention has for its object to provide a corrugated sheet metal pipe, adapted for use as a culvert and as well curbing to take the place of vitrified tiles. He refers to the difficulties attending the use of such tile, particularly for culverts—namely, the weight of material, the necessity for making it in short lengths, the liability of the cement used to connect sections to be washed out, and the careful preparation of the bed to relieve strain. He states that his metal tiles may be laid on an uneven bed without injurious results, the improved culvert being strengthened against transverse as well as against crushing and other destructive strains, the joints being formed without the use of cement, and that by reason of its weight there is a saving in expense of transportation. The specifications further state that:

"The improved culvert may be constructed in sections of any desired length and diameter to suit the purpose for which it is designed, the same consisting of sheet metal rolled to a cylindrical form and being provided with circumferential corrugations, preferably arranged in transverse planes, in contradistinction to the corrugations which are formed spirally. The corrugations are extended uniformly to the extremities of the sections, whereby when two sections are connected the terminal corrugations of the connected ends interlock. Preferably each section terminates at one end in a flared portion of a corrugation, as shown at 1, and at the other end in a contracted portion of a corrugation, as shown at 2, whereby the flared end of one section is adapted to receive the contracted end of the adjoining section. These telescoping and interlocking extremities of contiguous sections are permanently joined by means of bolts, 3. The fit of the extremities of the sections is sufficiently close to form a practically water-tight joint when secured by means of bolts or rivets.

"By extending the corrugations to the extremities of the sections and interlocking the terminal corrugations the culvert is strengthened at its joints

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as well as at intermediate points, and the increased thickness has the effect of making the device stronger at the joints than elsewhere. Hence a roughly formed trench or ditch is sufficient for the reception of a culvert constructed in accordance with my invention, and the injury to a roadway through which the culvert extends is prevented by the fact that the undermining of an end or intermediate portion of the culvert will not cause displacement of the conductor, and therefore will not result in the inoperativeness thereof."

The claim is for:

"A culvert constructed of sheet metal and comprising connected cylindrical sections provided with circumferential corrugations extending to the extremities of the sections, each section terminating at one end in a flared and at the other end in a contracted portion of a corrugation, whereby the contracted extremity of one section is adapted to fit into the flared extremity of the adjoining section to interlock the terminal corrugations, and the means, as bolts, engaging the overlapping extremities of the corrugations for securing the sections together, substantially as specified."

The judge who heard the cause in the Circuit Court suggests that there is no patentable novelty in conceiving the idea that a sheet metal pipe is less liable to breakage than a tile pipe and that it may be transported in greater lengths, that it is common knowledge that corrugated pipe is stronger than plain pipe, and that metal pipe has been used to carry water underground for very many years. He also points out that the method of connecting sections by inserting a contracted end into a flared end is common with stovepipes. It is not suprising that he reached the conclusion that no patentable novelty was disclosed. Nevertheless two other judges sitting at circuit have reached the conclusion that the point is not sufficiently free from doubt to warrant a decision against the patent when the question is presented on demurrer. Judge McPherson, in Doherty v. Harry, 183 Fed. 426, a cause decided before Judge Ray's opinion was rendered, says:

"My views are that the question is doubtful, my first impression having been that the patent was not valid; but upon reflection I cannot say but what the matter is involved in doubt."

Judge Kohlsaat, sitting in the Northern District of Illinois, subsequent to Judge Ray's decision, has also overruled a demurrer to a bill on the same patent.

There seems to be sufficient doubt about the question of patentability to call for a disposition of the case similar to that made in Beer v. Walbridge, 100 Fed. 465, 40 C. C. A. 196, National Casket Co. v. Stolts, 174 Fed. 113, 98 C. C. A. 617, and Lyons v. Drucker, 106 Fed. 416, 45 C. C. A. 368, where we reversed decisions sustaining demurrers. In patent causes, moreover, there is always the chance that evidence as to conditions prior and subsequent to the patentee's publication of his improved device may be introduced which would induce the reversal even of a very strong impression formed merely from a perusal of the patent itself in the light of common knowledge. Such instances are within the experience of this court. See Schenck v. Singer Mfg. Co., 77 Fed. 811, 23 C. C. A. 494; Brunswick-Balke-Collender Co. v. Thum, 111 Fed. 904, 50 C. C. A. 61.

We think the bill avers title sufficiently.

The decree of the Circuit Court is reversed, with costs.